IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CONNIE L. COTTRILL-URMOS, | ) | Case No. 1:16-cv-684 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I.     Introduction**

Plaintiff, Connie L. Cottrill-Urmos ("Cottrill-Urmos"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Title II and Title XVI of the Social Security Act.  This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

## II. Procedural History

Cottrill-Urmos filed applications for DIB and SSI on December 15, 2011,[1] alleging disability onset dates of May 3, 2007, for DIB and July 1, 2012, for SSI. (Tr. 14, 30) Cottrill-Urmos' applications were denied initially on August 27, 2012, (Tr. 27-40) and upon reconsideration on June 4, 2013 (Tr. 41-42). Thereafter, Cottrill-Urmos filed a written request for hearing on August 7, 2013. (Tr. 56-58)

A hearing was held on January 22, 2015, before Administrative Law Judge Barbara Sheehe ("ALJ"). (Tr. 633-67) The ALJ denied Cottrill-Urmos' claims for benefits on April 9, 2015. (Tr. 11-26) The Appeals Council declined to review that decision on February 25, 2016, rendering the ALJ's April 9, 2015, decision the final decision of the Commissioner. (Tr. 7-10)

## III. Evidence

### A. Medical Evidence

#### 1. Dr. Amy Tucker

A July 31, 2007, MRI revealed a "small osteochondral lesion of the distal tibia" with "some middle subtalar joint synovitis." (Tr. 197) Upon physical examination, Amy Tucker, M.D., noted significant limitation of ankle dorsiflexion on both sides but no gross instability on drawer testing. (Id.) Dr. Tucker prescribed physical therapy, custom inserts, and stated that Cottrill-Urmos could take anti-inflammatory medications. (Id.)

An x-ray dated July 31, 2008, revealed no acute bony abnormalities. (Tr. 382) A physical examination revealed no instability and no significant deficit on gross motor function

---

[1] The ALJ's decision states that Cottrill-Urmos' application was filed on December 15, 2011. (Tr. 14). The record also references prior and a subsequent applications. (Tr. 100, 107, 142-43)

testing. (Id.) Cottrill-Urmos performed single leg toe raises, although it caused discomfort. (Id.) Dr. Tucker prescribed a stretching regime and an ankle brace with insert on the left side. (Tr. 382-83). She stated that if Cottrill-Urmos got significant relief, she would consider prescribing a brace for the right side. (Tr. 383).

On September 17, 2009, Dr. Tucker noted that Cottrill-Urmos' x-rays showed joint spaces fairly well maintained, with a little bit of mild narrowing of joint space "but definitely no bone on bone and no severe osteophytes" and no acute bony abnormality. (Tr. 601) Upon physical exam, Dr. Tucker noted that Cottrill-Urmos expressed significant pain when attempting single heel raises and exhibited limit ankle dorsiflexion. (Id.) Finally, Dr. Tucker concluded that there were no significant deficits on gross motor function testing. (Id.)

On January 6, 2010, Dr. Tucker again reviewed x-rays of Cottrill-Urmos' ankles and found no acute abnormalities. (Tr. 600) She determined that joint space was still fairly good with slight narrowing. (Id.) She counseled Cottrill-Urmos regarding appropriate footwear. (Id.)

On September 28, 2011, Dr. Tucker reviewed an x-ray of Cottrill-Urmos' bilateral ankles. (Tr. 598) She noted that ankle joint space was fairly well maintained and that there were no acute bony abnormalities. (Id.) Dr. Tucker also noted that Cottrill-Urmos was getting relief from her braces and that there were no abnormalities noted on inspection, palpation, range of motion, strength, and stability testing of Cottrill-Urmos' upper extremities. (Id.) Dr. Tucker recommended that Cottrill-Urmos continue with conservative care including wearing appropriate shoes and weight loss. (Tr. 599)

### 2. Physical Therapy – Wadsworth-Rittman Hospital

Cottrill-Urmos initially attended a physical therapy session at the Wadsworth-Rittman Hospital on June 25, 2007, in order to strengthen her ankles. (Tr. 551) That same day, she

participated in an initial evaluation. (Tr. 559-60) The therapist reported that she was unable to toe walk and her stability test was negative. Id. The physical therapy notes list a diagnosis of ankle instability[2] and noted Cottrill-Urmos' report that her ankles gave out while walking and going down steps. (Id.) She was discharged in December 2007 after 19 visits. (Tr. 551-69) The physical therapist reported that her overall progress had been slow and that she had met short term therapy goals but not long term therapy goals. (Id.)

### 3. Pain Management – Dr. Maged Fouad

From April 2010 through December 2014, Cottrill-Urmos met with Maged Fouad, M.D. a pain management specialist. (Tr. 202-223, 287-311, 402-549) In April 2010, Dr. Fouad noted that Cottrill-Urmos wore bilateral ankle braces and walked with an antalgic gait. (Tr. 459) Dr. Fouad prescribed MS Contin and Vicodin. (Id.) In May 2011 and December 2011, Cottrill-Urmos stated that her pain was better controlled with medication. (Tr. 456) On all examinations, Dr. Fouad noted an antalgic or slow gait; that reflexes, motor strength, and coordination were generally normal; and, at times, noted a limited range of motion in the bilateral ankles. (Tr. 403, 406, 415, 417-18, 421, 423-24, 426-27, 429-30, 433, 435, 438, 442-43, 445-46, 449, 452, 455, 459, 465, 471, 475, 479, 482, 485, 492, 495, 498, 504, 516, 518, 521, 524, 527, 535, 539, 543, 545, 547) Further, it was noted on each visit that Cottrill-Urmos had continued ankle pain. (Id.) It was also frequently noted that Cottrill-Urmos was doing well on the current pain management treatment plan and was encouraged to stay active. (Tr. 403, 405, 456, 466, 470, 490, 513, 537)

---

[2] It is unclear whether the diagnosis came from the physical therapist or a doctor.

### 4. Dr. Diana Lishnevski

In 2013 and 2014, Cottrill-Urmos regularly saw Diana Lishnevski, M.D. for various issues. (Tr. 345-393) Dr. Lishnevski noted Cottrill-Urmos' complaints with chronic pain. She indicated that Cottrill-Urmos' gait was either slow or normal. (See e.g., Tr. 349, 358, 385-86, 393) She also noted that Cottrill-Urmos generally presented with bilateral ankle braces and had a decrease range of motion but frequently stated that Cottrill-Urmos denied any problems with shoulders, elbows, ankles, hips, or knees. (See e.g., Tr. 360-61, 365, 85-86) In March 2013, Cottrill-Urmos reported to Dr. Lishnevski that she had been experiencing chronic pain and was anxious and depressed because of her inability to perform usual activities such as bending and cleaning the house. (Tr. 364). On December 19, 2013, Dr. Lishnevski filled out a return to work/school form in which she indicated that Cottrill-Urmos should be excused from all work/school. (Tr. 345-46) The form does not indicate why or how long Cottrill-Urmos should be excused from work/school.[3] (Tr. 346)

### B. Cottrill-Urmos Testimony[4]

Cottrill-Urmos testified that she previously worked as a grocery bagger and as a machine operator. (Tr. 638, 640) Cottrill-Urmos stated that the cartilage in her ankles had deteriorated away and her ankles were "bone to bone" at the time of the hearing. (Tr. 643-44) She also testified to having arthritis in both ankles and being flatfooted. (Tr. 644) Cottrill-Urmos asserted that she could stand for only 15 to 30 minutes at a time, depending on the weather, and could sit for only 30 to 40 minutes at a time. (Tr. 645-46) She further testified that after she sat

---

[3] There is handwriting on the form, but the handwriting is illegible. (Tr. 346)

[4] Vocational Expert Roxanne Benoit ("VE") also testified at Cottrill-Urmos' January 22, 2015, hearing. (Tr. 657-65). Because the VE's testimony is not relevant to Cottrill-Urmos' sole argument in favor of reversal/remand, the VE's testimony has not been summarized herein.

for 30 to 40 minutes, she would have to lie down on her side for a couple of hours before she would be able to sit again. (Tr. 646) She also stated that she tried not to walk because she is "not even supposed to walk a half a mile a day." (Id.) She further testified that she had to sit down, rubs her legs, or lie down with a pillow between her legs in order to relieve her pain. (Tr. 645-46)

The ALJ noted that Cottrill-Urmos had a cane at the hearing. (Tr. 647) Cottrill-Urmos testified that she had been using the cane daily for two months. (Id.) She was unaware if the cane had been prescribed by a doctor but said that a November functional capacity evaluation revealed that she needed a cane or some assistive device for walking. (Tr. 648) Cottrill-Urmos also testified that she used crutches on and off before 2007 and more frequently by 2009. (Tr. 649) She testified that she only slept two to three hours at night and sometimes got no sleep at all, despite the fact that her medications made her drowsy. (Tr. 654-55).

As to her daily activities, Cottrill-Urmos stated that she took care of her two sons, ages nine and ten. (Tr. 651) She testified that she fixed them meals, did the laundry, and helped them put things away. (Tr. 651-53) She stated that if she made something on the stove, like bacon and eggs, she had to sit down halfway through. (Tr. 651) She testified that when she did the laundry she had to go down 12 to 14 steps carrying a 5-8 pound laundry basket. (Tr. 651-52). She further testified that she drove to the grocery store, the bank, doctor appointments, and to visit her mother. (Tr. 654) She clarified that she went grocery shopping 2-3 times a month, but used a go-cart to get around the grocery store. (Tr. 655, 657). On an average day, Cottrill-Urmos stated that her pain level was between a 7 and a 9 in severity. (Tr. 657)

6

**IV.    Standard for Disability**

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[5]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,[13] claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

---

[5] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

    5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

**V. The ALJ's Decision**

    The ALJ issued a decision on April 9, 2015. A summary of her findings are as follows:

1. Cottrill-Urmos meets the insured status requirements of the Social Security Act through December 31, 2009. (Tr. 16)

2. Cottrill-Urmos had not engaged in substantial gainful activity since May 3, 2007, the alleged onset date. (Tr. 16)

3. For Title II purposes, Cottrill-Urmos had the following severe impairments prior to the date last insured: obesity, bilateral pes planus with posterior tibial tendon insufficiency and left ankle arthrosis, asthma, osteoarthritis of the ankles, bilateral plantar fasciitis, anxiety, depression, and posterior tendon tendonitis. (Tr. 16)

4. For Title XVI purposes, Cottrill-Urmos has the following severe impairments: obesity, bilateral pes planus with posterior tibial tendon insufficiency and left ankle arthrosis, asthma, osteoarthritis of the ankles, bilateral plantar fasciitis, anxiety, depression, posterior tendon tendonitis, dysthymic disorder, depressive disorder – not otherwise specified, and lumbago. (Tr. 17)

5. Cottrill-Urmos does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 17)

6. For Title II purpose, Cottrill-Urmos has the residual functional capacity ("RFC") to perform sedentary work except no foot controls; never climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs;

8

occasional balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to extreme cold and heat, humidity, fumes, odors, dust, gases, and poorly ventilated areas; can understand, remember, and carry out simple routine tasks that can be learned in 30 days or less with a reasoning level of one to three, and low-stress work, which is defined as precluding tasks that involve high productions quotas such as piece work or assembly line work, strict time requirements, arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others; and superficial interaction with co-workers and the public. (Tr. 19)

7. For Title XVI purposes, Cottrill-Urmos has the residual functional capacity ("RFC") to perform sedentary work except no foot controls; never climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; can understand, remember, and carry out simple, routine tasks that can be learned in 30 days or less with a reasoning level of one to three, repetitive task such that the work environment is relatively static, and low-stress work, which is defined as precluding tasks that involve high productions quotas such as piece work or assembly line work, strict time requirements, arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others; and occasional and superficial interaction with co-workers and the public. (Tr. 21)

8. Cottrill-Urmos is unable to perform any past relevant work. (Tr. 24)

9. Cottrill-Urmos was born on April 17, 1965, and was 42 years old, which is defined as a younger individual, on the alleged disability onset date. The claimant subsequently changed age category to younger individual age 45-49. (Tr. 24)

10. Cottrill-Urmos has at least a high school education and is able to communicate in English. (Tr. 24)

11. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. (Tr. 24)

12. Considering Cottrill-Urmos' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 24)

Based on these findings, the ALJ determined that Cottrill-Urmos had not been under a disability since May 3, 2007, through the date of the decision. (Tr. 25)

**VI.    Law & Analysis**

    **A.    Standard of Review**

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

10

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

**B.     Step Three – Listing 1.02**

Cottrill-Urmos' sole argument is that the ALJ erred at Step Three of the disability evaluation by finding that she did not meet Listing 1.02. ECF Doc. No. 14, Page ID# 72-78. At Step Three of the five-step disability evaluation process, a claimant will be found disabled if she has an impairment or combination of impairments that meets or medically equals one of the

listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010). Each listing specifies the objective medical and other findings needed to satisfy the criteria of that listing. 20 C.F.R. § 404.1525(c)(3), 416.925(c)(3). A claimant must satisfy all of the criteria to "meet" the listing. Id.; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). "A finding that a claimant suffers from a listed impairment is critical because it results in an automatic finding of disability." *See* 20 C.F.R. § 416.920(d); *MacNeil v. Astrue*, 908 F. Supp. 2d 259, 264 (D. Mass. 2012).

It is the claimant's burden to prove that he meets or medically equals an impairment in the Listings. *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir.1987) (per curiam). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Malone v. Comm'r of Soc. Sec.,* 507 F. App'x 470, 472 (6th Cir. 2012) *quoting Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). However, "[i]n order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons for [the] decision." *Colvin v. Comm'r of Soc. Sec.,* No. 5:13CV2674, 2015 WL 1471769, at *1 (N.D. Ohio Mar. 31, 2015). Cottrill-Urmos contends that she proved that she met the required criteria under Listing 1.02. Listing 1.02 describes major dysfunction of a joint due to any cause and provides, in pertinent part:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ considered whether any of the Cottrill-Urmos' severe impairments—obesity, bilateral pes planus with posterior tibial tendon insufficiency and left ankle arthrosis, asthma, osteoarthritis of the ankles, bilateral planter fasciitis, anxiety, depression, posterior tendon tendonitis, dysthymic disorder, depressive disorder (not otherwise specified), and lumbago—met or equaled an impairment in the Social Security Administration's Listing of Impairments. The ALJ specifically reviewed Listing 1.02 and determined that Cottrill-Urmos did not meet that listing. The ALJ explained the basis for her determination as follows:

> Specifically, the undersigned has considered the claimant's osteoarthritis and ankle impairments under Listing 1.02, but concluded that the claimant's condition does not satisfy the severity requirements of the listed impairments, as she does not have evidence of the required [1] medically (sic) imaging findings, [2] gross anatomical deformity, and [3] chronic joint pain and stiffness with signs of limitation of motion.

(Tr. 17) (numbering added). Cottrill-Urmos contends that this analysis is insufficient and that her evidence proved that she met Listing 1.02.

"The Sixth Circuit has required only minimal articulation at Step 3 of the sequential analysis. So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, the decision may be affirmed." *Sielaff v. Comm'r of Soc. Sec.*, No. 1:10CV1571, 2012 WL 567614, at *2 (N.D. Ohio Feb. 21, 2012) (internal citations omitted); *See also Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("there is no heightened articulation standard where the ALJ's findings are supported by substantial evidence."). Here, the ALJ specifically detailed Cottrill-Urmos' impairments, accurately summarized her medical history, and gave some weight to the medical consultants who determined that Cottrill-Urmos does not have a

13

disabling impairment. (Tr. 17-24). The ALJ also determined that Cottrill-Urmos' diagnostic assessments and her daily activities contradicted her statements regarding the intensity and persistence of her impairments. (Tr. 17-24). Reading the decision as a whole, the ALJ's decision is supported by substantial evidence. However, because Cottrill-Urmos has pointed to evidence that she claims proved she has met the requirements of Listing 1.02, each of those requirements will be discussed below.[6]

### 1. Required Medical Imaging Findings

Cottrill-Urmos cites the following evidence in support of her claim that she met Listing 1.02's requirement that a claimant must present "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints: (1) a July 31, 2007, MRI displaying that she developed ankylosis (Tr. 197); (2) Dr. Tucker's assessment of Cottrill-Urmos' x-ray on September 24, 2008, noting mild joint space narrowing (Tr. 606); (3) September 17, 2009, x-ray by Dr. Tucker noting mild joint space narrowing (Tr. 601); (4) December 30, 2008, Dr. Hedge examined previous MRI results and found arthritis in both ankles with inflammation (Tr. 593-94). ECF Doc. No.14, Page ID# 73-74. Thus, it appears that Cottrill-Urmos is arguing that she met this requirement by demonstrating both ankylosis and joint space narrowing. ECF Doc. No. 14, Page ID# 73-74.

---

[6] The Commissioner asserts that Cottrill-Urmos also fails to meet Listing 1.02 subsection A (inability to effectively ambulate). However, the ALJ did not state that Cottrill-Urmos failed to meet subsection A of Listing 1.02. Therefore, the Commissioner's argument as to this issue cannot be reviewed because it constitutes impermissible *post hoc* rationalization. *See e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, 121 S. Ct. 1861, 149 L. Ed. 2d 939, (2001)) (arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration."; *See also, S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947) (a reviewing court must judge propriety of agency action "solely by the grounds invoked by the agency").

As to ankylosis, Cottrill-Urmos asserts that her July 31, 2007, MRI displayed ankylosis. ECF Doc. No. 14, Page ID# 74-75. Contrary to her claim, there is no indication that the MRI revealed ankylosis. (Tr. 197) Dr. Tucker made no mention of ankylosis in her review of the MRI. In the assessment and plan section of Dr. Tucker's July 31, 2007, treatment notes, she mentioned that Cottrill-Urmos had "left ankle arthrosis." (Id.) If it is Cottrill-Urmos' contention that arthrosis is the same as ankylosis, she has not provided any medical evidence or other authority for such a contention.[7] Moreover, the report did not indicate that the "arthrosis" was seen on the MRI. Thus, the 2007 MRI does not support Cottrill-Urmos' argument that she proved she met the listing requirement.

Cottrill-Urmos also contends that she met the medical imaging requirement because her September 2008 and September 2009 x-rays showed joint space narrowing. ECF Doc. No. 14, Page ID# 73-74. The ALJ acknowledged that joint space narrowing was shown on the 2009 x-ray but also pointed out Dr. Tucker's accompanying report where she stated that Cottrill-Urmos had "perhaps some mild narrowing of the joint space" but also pointed out that the "joint spaces are fairly well maintained" and there was "definitely no bone on bone and no severe osteophytes." (Tr. 601) As to the 2008 x-ray, Dr. Tucker again stated that there was "mild joint space narrowing at the ankle on the left when compared to the right" but that the "joint space is still fairly well maintained." (Tr. 606)

---

[7] Arthrosis or arthropathy is defined as "any joint disease." *Dorland's illustrated medical dictionary* (30th ed.). Philadelphia: W.B. Saunders at page 157. Ankylosis is defined as "immobility and consolidation of a joint due to disease, injury, or surgical procedure." Id. at page 93. See also Foot disorders, Soc. Sec. Disab. Prac. § 7:8 (Ankylosis "refers to a joint that is essentially frozen, either by overgrowth of bone tissue or by fibrous bands around the joint.") Therefore, it appears a person could have arthrosis (i.e., joint disease) without necessarily having ankylosis (i.e., joint disease resulting in immobility and consolidation of a joint).

The parties dispute whether the reports indicating Cottrill-Urmos had "mild joint space narrowing" meet the listing requirement. Those same reports clarify that Cottrill-Urmos "joint space is still fairly well maintained." As Plaintiff points out, the Listing does not specify the degree of joint space narrowing that constitutes sufficient proof. However, the ALJ expressly mentioned this piece of evidence and determined that Cottrill-Urmos did not prove that she met the listing requirement. (Tr. 21) Cottrill-Urmos does not provide evidence to contradict the ALJ's interpretation. It is the ALJ's job to resolve ambiguities in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995) (citing *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989)). And the district court must uphold the ALJ's decision when the evidence is susceptible to more than one rational interpretation. *Id; See also Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."). Here the ALJ made a reasonable inference which was supported by Dr. Tucker's full report.

The undersigned cannot conclude that the ALJ's decision was not supported by substantial evidence; the ALJ made a reasonable analysis of the available medical evidence and opinions. *See Yeager v. Colvin*, No. 5:12CV02554, 2013 WL 6019204, at *9 (N.D. Ohio Nov. 13, 2013) (upholding the ALJ's analysis of the medical evidence when the parties disputed whether a protrusion "abutting" the nerve root was equivalent to a nerve root compromise). Moreover, the ALJ made specific findings in another section of her opinion (after completing her discussion of Step Three) which directly relate to this requirement of Listing 1.02 and demonstrate why Cottrill-Urmos does not meet the listing. As a result, "this case is on far firmer ground than those cases where courts have been asked to craft findings from the raw factual and

16

medical evidence [that] is apparent on the record." *Campbell ex rel. M.B. v. Comm'r of Soc. Sec.*, No. 1:13-CV-00329, 2014 WL 51334, at *7 (N.D. Ohio Jan. 6, 2014) (internal quotation and citation omitted).

Because the undersigned finds that the ALJ's decision that Cottrill-Urmos did not meet the requirement for appropriate medical imaging is supported by substantial evidence, and because Cottrill-Urmos must show that she meets every element of the listing, there is no basis upon which to reverse and remand in this case. However, for purpose of providing a thorough report and recommendation, the additional arguments made by Cottrill-Urmos are addressed below.

### 2. Gross Anatomical Deformity

Cottrill-Urmos also argues that the ALJ improperly found that she did not meet Listing 1.02's requirement for showing a gross anatomical deformity. ECF Doc. No. 14, Page ID# 74-78. Listing 1.02 provides that a gross anatomical deformity can be shown by subluxation, contracture, bony or fibrous ankylosis, or the instability of a major joint. Listing 1.02(A). Cottrill-Urmos contends that her gross anatomical deformity is instability of her ankles. ECF Doc. No. 14, Page ID# 74. In support, she suggests the following evidence confirms instability of her ankles: (1) her diagnoses of flat feet and posterior tibial tendon insufficiency,[8] (2) her discomfort with single leg toe raises, and (3) diffuse tenderness throughout her hind feet and ankles. ECF Doc. No. 14, Page ID# 74. Cottrill-Urmos cites *Darabed v. Astrue*, 2011 U.S. Dist. LEXIS 153810, *21-23, 2011 WL 7456148 (N.D. Ohio Dec. 6, 2011)(M.J. Burke) for the

---

[8] Cottrill-Urmos also claims her diagnosis of ankylosis supports instability. However, as discussed in the prior section of this report and recommendation, there is no evidentiary support for Cottrill-Urmos' claim that she was diagnosed with ankylosis.

17

proposition that these pieces of evidence support her claims of instability. *Darabed* is an unreported case from this court in which the court recognized that the inability "to perform stance and balance" activities and the inability to "heel-toe walk" could lead a reasonable fact finder to reach a determination that a claimant does in fact have a gross anatomical deformity (i.e., instability) within the meaning of Listing 1.02(A). However, *Darabed* is distinguishable on its facts.

In *Darabed* the ALJ found that the claimant in that case could not perform stance and balance activities or heel-toe walk. *Id.* Here, the ALJ found no such thing. In fact, not only does Cottrill-Urmos lack an ALJ determination that she could not perform the stated activities, but she also has not pointed to any medical evidence concluding that she was unable to perform these activities. She points only to her diagnoses of flat feet and posterior tibial tendon insufficiency, her ankle/feet tenderness, and her discomfort with single leg toe raises.[9] ECF Doc. No. 14, Page ID# 74. The undersigned finds that an inability to perform an activity cannot be inferred from the presence of tenderness or discomfort absent a supporting medical opinion. Such an opinion is absent here. Thus, *Darabed* does not apply.

Listing 1.02 does not define instability and, aside from *Darabed*, Cottrill-Urmos has not pointed to any evidence that her tenderness, reported discomfort, and diagnoses qualify as instability under the listing. The ALJ discussed the medical evidence and determined that the

---

[9] There is other evidence in the record relating to the instability requirement that Cottrill-Urmos does not point in her brief. The undersigned notes that her physical therapy records indicate that she was unable to toe walk on June 25, 2007. (Tr. 559) An instability test conducted that day was negative as well as a 2008 instability test. (Tr. 382, 560) All of the physical therapy notes list "ankle instability" as a diagnosis but do not indicate where the diagnosis came from. The therapist notes indicate that Cottrill-Urmos' self-reported that her ankles give out when she is walking and going down steps. (Tr. 551, 553, 557). The ALJ did not specifically discuss this information and, again, Cottrill-Urmos did not bring up this evidence in her briefing to this Court. However, the ALJ did point out that overall the "[d]iagnostic test results and physical examination findings have been largely unremarkable." (Tr. 21)

diagnostic test results and physical examinations have been largely unremarkable. (Tr. 21-23) The ALJ also determined that Cottrill-Urmos' daily activities indicated a greater level of functioning that she claimed. (Tr. 23) Ultimately, the ALJ determined that Cottrill-Urmos did not present evidence of a gross anatomical deformity. (Tr. 17) Again, Cottrill-Urmos has not provided any evidence that contradicts the ALJ's interpretation. It is the ALJ's job to resolve ambiguities in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995) (citing *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989)). And the district court must uphold the ALJ's decision when the evidence is susceptible to more than one rational interpretation. *Id.* Therefore, the undersigned cannot conclude that the ALJ's decision lacked supporting substantial evidence, because it reflects a reasonable analysis of the available medical evidence/opinions. *See e.g., Yeager v. Colvin*, No. 5:12CV02554, 2013 WL 6019204, at *9 (N.D. Ohio Nov. 13, 2013) (finding that an ALJ's reasonable analysis of the available medical evidence/opinions should be upheld).

### 3. Chronic Joint Pain and Stiffness with Limitation of Motion

Lastly, Cottrill-Urmos argues that she has shown that she meets Listing 1.02's requirement for showing chronic joint pain and stiffness with limitation of motion. ECF Doc. No. 14, Page ID# 74-78. She points to various treatment notes which documented her complaints of constant pain and limitation of motion. Id. The ALJ noted Cottrill-Urmos' claims of pain and that she was in pain management treatment for various impairments including her ankle. (Tr. 22) The ALJ also noted that a physical examination revealed limited range of motion in her ankles bilaterally. (Tr. 22) Cottrill-Urmos fails to present any evidence as to the issue of stiffness and the ALJ did not discuss this issue. Because joint pain "and stiffness" are both required, there can be no basis for reversal on this issue.

Further, even assuming arguendo that Cottrill-Urmos presented evidence of stiffness, joint pain, and limitation of motion, and assuming arguendo that the ALJ failed to resolve this conflict in the evidence and/or adequately explain why Cottrill-Urmos did not meet this requirement of Listing 1.02, reversal and remand would not be required.  For the reasons mentioned above, Cottrill-Urmos has not shown the required medical imaging findings or a gross anatomical deformity and she must that show that she has provided evidence to meet each requirement of the listing in order for the case to be reversed and remanded.

## VII. Conclusion

For the foregoing reasons, substantial evidence supports the finding that Cottrill-Urmos does not meet Listing 1.02.  Thus, the undersigned finds that Cottrill-Urmos has not demonstrated a basis upon which to reverse or remand the Commissioner's decision.  For these reasons, I recommend that the final decision of the Commissioner be AFFIRMED, pursuant to 42 U.S.C. §405(g).

Dated: December 12, 2016

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).